# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARK RUSSELL WEINERT,<br><br>            Plaintiff,<br><br>v.<br><br>JESSE BASSUENER, MD CHARLES LARSON, JULIE LUDWIG, RN WENDY POLENSKA, RN LINDA RICHARDSON, ROBERT WATERMAN, and CANDACE WHITMAN,<br><br>            Defendants. | Case No. 18-CV-1995-JPS<br><br><br><br>**ORDER** |

      Plaintiff, who is incarcerated at Fox Lake Correctional Institution ("FLCI"), filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #2). Plaintiff has been assessed and paid an initial partial filing fee of $70.08. 28 U.S.C. § 1915(b)(4).

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts; his statement need only "'give the defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "'labels and conclusions'" or "'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "'that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should first "identif[y] pleadings that, because they are no more than conclusions, are

not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give Plaintiff's *pro se* allegations, "'however inartfully pleaded,'" a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff alleges that on March 24, 2018, he hurt his arm while performing his job duties as a janitor at FLCI. (Docket #1 at 3). Two days later, he was seen in the health services unit ("HSU") by Defendant Charles Larson ("Dr. Larson"), who diagnosed him with having a "distal bicep rupture." *Id.* at 4. Dr. Larson told Plaintiff he would need surgery to repair the injury. *Id.* He gave Plaintiff a referral to an orthopedic specialist and included the note "ASAP" on the order. *Id.* Defendant Jesse Bassuener ("Bassuener") scheduled an appointment for Plaintiff to see the specialist for an MRI, but because he failed to read the "ASAP" note, he scheduled a routine appointment for 52 day later. *Id.* at 4–5.

On April 3, 2018, in preparation for the meeting with the specialist, Defendant Wendy Polenska ("Polenska") had Plaintiff fill out a medical questionnaire. *Id.* at 5. On the questionnaire, Plaintiff indicated that he is claustrophobic and would therefore require a sedative to complete the MRI.

*Id.* On April 11, 2018, Dr. Larson ordered an oral sedative, 5 mg of Diazepam. *Id.*

On May 10, 2018, Plaintiff was taken to Waupun Memorial Hospital ("WMH") for his MRI. *Id.* However, once there, Plaintiff learned that the sedative had not been ordered. *Id.* He was not able to undergo the MRI because the thought of going into the tube caused him fear and distress. *Id.* He was returned to FLCI, where he told Polenska about the missing sedative. *Id.* She responded that he should have received medication and did not know why he had not. *Id.*

On May 13, 2018, Plaintiff wrote a request to HSU about the sedative issue. *Id.* at 6. The request was forwarded to Defendant Candace Whitman ("Whitman"). *Id.* Plaintiff says that Whitman did nothing in response to the request to ensure that he received a sedative when he went back to the hospital for an MRI. *Id.* Apparently Dr. Larson and Polenska also did nothing to ensure the next MRI attempt was accompanied by a sedative. *Id.*

On May 17, 2018, Plaintiff was taken back to the hospital for an MRI. *Id.* at 7. Once again, Plaintiff was told there was no sedative for him. *Id.* Staff at the hospital asked if he would do the MRI anyway, but Plaintiff began to panic at the thought of it and did not go through with it. *Id.*

After his second failed MRI attempt, Plaintiff was seen by Dr. Eric Nelson, an orthopedic surgeon at WMH. *Id.* Dr. Nelson examined Plaintiff and determined that he needed surgery. *Id.* He also determined that because of the delay in receiving treatment after the injury, the surgery would come with significant risk. *Id.* Dr. Nelson wrote an order recommending that Plaintiff be given Ativan for sedation for the next MRI attempt. *Id.*

Plaintiff was returned to FLCI, where a nurse took down Dr. Nelson's recommendation for Ativan and had Dr. Larson sign off on it. *Id.* at 8. An "unknown person" then canceled the Ativan order and instead ordered Diazepam. *Id.* Bassuener then scheduled another "routine" MRI appointment for Plaintiff, this time 42 days out. *Id.* She did not schedule a follow-up appointment with Dr. Nelson. *Id.* at 9. Plaintiff accuses Dr. Larson and Whitman of ignoring Dr. Nelson's recommendations that the surgery be done quickly and that Plaintiff receive Ativan. *Id.* at 8.

On May 31, 2018, Plaintiff submitted a request to use a hand cart to carry his canteen items because of his arm injury. *Id.* at 9. Defendant Linda Richardson ("Richardson"), a nurse, denied the request, indicating that Plaintiff should "ask to be seen." *Id.* On June 3, 2018, a different nurse approved Plaintiff's request for a hand cart. *Id.*

On June 5, 2018, Plaintiff submitted a request for ibuprofen because of his arm pain. *Id.* The next day, Richardson responded that Plaintiff could purchase ibuprofen in the canteen. *Id.* On June 9, Whitman, to whom Plaintiff apparently appealed the ibuprofen denial, also denied the request, telling Plaintiff to "ask to be seen." *Id.* at 10. Nonetheless, on June 13, Polenska sent Plaintiff some ibuprofen. *Id.*

On June 12, 2018, Plaintiff met with Bassuener and asked why she had not scheduled his first MRI sooner given that Dr. Larson had written "ASAP" on the order. *Id.* Bassuener revealed that she had not noticed that the order included an ASAP instruction. *Id.* She also said she has a pile of work to do and many prisoners to process. *Id.* Plaintiff accuses Bassuener of not properly reading the order. *Id.* at 10–11.

On or around June 12, 2018, Plaintiff went to his unit sergeant and asked him to make an emergency call to clinical services because of his pain

and anxiety. *Id.* at 11. Plaintiff met with a psychologist, Dr. Sally Williams, that day and asked her to intervene on his behalf. *Id.* Dr. Williams sent an email to Defendant Julie Ludwig ("Ludwig") about the issue. *Id.*

On June 21, 2018 Ludwig told Plaintiff that regardless of his alleged claustrophobia, he would be given 5 mg of Diazepam at this next MRI appointment, not Ativan. *Id.* Plaintiff explained that Ativan had worked for him in the past, and Ludwig said she would consult Dr. Larson. *Id.* at 11–12. Despite having this information, Dr. Larson decided to stick with his original order of Diazepam. *Id.* at 12.

On June 28, 2018, Plaintiff was taken to WMH for a third attempt at an MRI. *Id.* He was given Diazepam, and he says it did not work. *Id.* Plaintiff tried to undergo the MRI anyway, but he experienced a panic attack and had to stop. *Id.* Bassuener re-scheduled an MRI for 27 days later. *Id.*

On June 29, 2018, Plaintiff wrote to Whitman asking for her help to get sufficient medication so that he could complete an MRI. *Id.* at 13. He told Whitman that he had learned about an "open MRI" option at another hospital for people who cannot submit to a regular MRI. *Id.*

On July 1, 2018, Plaintiff sent a request to his regular psychiatrist of three years, Defendant Robert Waterman ("Dr. Waterman"), and asked to be seen. *Id.* Plaintiff wrote that he was having nightmares because of his fear of the MRI machine and was also having panic attacks due to his worry that he would not have surgery if he could not complete an MRI. *Id.* Waterman did not respond. *Id.* at 14. On July 9, 2018, Plaintiff sent a request to the psychology services unit asking to see another psychiatrist. *Id.* He did not receive a response. *Id.*

On July 12, 2018, Whitman informed Plaintiff that she had decided to give Plaintiff Ativan for his next MRI appointment. *Id.* The conversation

took a turn, and Whitman eventually accused Plaintiff of lying about when he actually became injured and trying to get medical attention for an old injury. *Id.* at 15. After the meeting, Whitman told Bassuener to call WMH. *Id.* Bassuener did so and gave the staff "false and misleading information" about Plaintiff. *Id.* Specifically, Bassuener told WMH staff that the Department of Corrections can only prescribe Diazepam and asked if Dr. Nelson would prescribe Ativan. *Id.* at 23. Bassuener also told WMH that there was no record of Plaintiff having an MRI in the past, and that Plaintiff had refused the first three MRIs. *Id.* She did not mention claustrophobia. *Id.*

On July 19, 2018, Plaintiff had a meeting with Dr. Larson and Whitman. *Id.* at 15. At this meeting, Whitman told Plaintiff that she had placed the order for medication for Plaintiff's first MRI attempt and did not know why there was not any medication for him. *Id.* at 16. During this same meeting, Plaintiff complained of routine appointments being made for his time-sensitive injury. *Id.* Dr. Larson told Plaintiff that "ASAP" does not mean immediately, but instead means "sooner rather than later." *Id.* at 16–17. Dr. Larson also said Plaintiff's injury was not urgent or an emergency. *Id.* at 17. Plaintiff apparently agrees that his injury was not an emergency, but thought the treatment needed to come sooner than it did. *Id.* Dr. Larson also accused Plaintiff of sabotaging his MRIs by not going through with them. *Id.*

On July 25, 2018, Plaintiff was taken to WMH for a fourth MRI attempt. *Id.* at 19. He was given Ativan but it had no effect. *Id.* Plaintiff attempted to get into the MRI machine anyway but had a panic attack and stopped. *Id.*

On August 15, 2018, after some disagreements between Plaintiff and Whitman about notes in his medical file, Whitman sent a memo to Plaintiff

informing him that "no further services are necessary or required for Plaintiff to function." *Id.* at 22. The memo also stated that Dr. Larson had declared Plaintiff's surgery an "elective procedure." *Id.* at 22–23.

Plaintiff claims his daily activities and work capabilities have been drastically reduced. *Id.* at 25. He is not able to exercise like he used to, and he believes he will not be able to return to his job as a roofer when he is released from prison. *Id.*

Plaintiff's complaint crosses the low threshold set at screening to state a claim for deliberate indifference to his serious medical need, in violation of the Eighth Amendment, against Dr. Larson. To sustain such a claim, Plaintiff must show: (1) an objectively serious medical condition; (2) that Defendant knew of the condition and was deliberately indifferent in treating it; and (3) this indifference caused him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). To show that a delay in providing treatment is actionable under the Eighth Amendment, Plaintiff must also provide evidence that the delay exacerbated his injury or unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016).

At the present stage, having generously construed Plaintiff's allegations, the Court finds that Plaintiff states a claim against Dr. Larson for deliberate indifference to the serious medical need arising from his injured arm. *Cf. Murphy v. Walker*, 51 F.3d 714, 720 (7th Cir. 1995) (holding

that a broken limb is a serious injury that could result in permanent harm or a lingering disability absent proper care). Plaintiff's allegations suggest that Dr. Larson knew Plaintiff's injury was serious enough to require surgery, but ultimately decided not to allow him to pursue surgery because he was frustrated with Plaintiff's inability to submit to a regular MRI. It might be the case that Dr. Larson's treatment was reasonable, or at least not deliberately indifferent, but that is an issue for a later stage of the case.

Plaintiff will not be permitted to proceed against the balance of the Defendants. As to Polenska and Whitman, Plaintiff's chief allegations are that they did nothing to ensure that Plaintiff would receive a sedative at his MRI appointments. As to Ludwig, Plaintiff alleges that she did not change his medication order from Diazepam to Ativan despite Plaintiff telling her that Ativan had worked in the past. However, Plaintiff also alleges that these Defendants were acting at the direction of Dr. Larson, who had authority to issue or adjust the prescription. Plaintiff's allegations do not suggest that these Defendants' deference to Dr. Larson was "blind or unthinking," and he therefore has not stated a claim against them. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.).

As to Bassuener, Plaintiff's only complaint is that she did not schedule Plaintiff's MRIs soon enough. He accuses her of failing to read the "ASAP" note on Dr. Larson's order for the MRI. But Plaintiff has also alleged that Dr. Larson told him the timing of his appointments was consistent with an ASAP indicator—that ASAP does not mean

immediately. Therefore, Bassuener was following Dr. Larson's instruction, which she is entitled to do. Even if she should have scheduled the appointment sooner, her failure to see the ASAP note is negligent at best, and negligent conduct cannot form the basis of a constitutional claim. *Elyea*, 631 F.3d at 857 (negligence or inadvertence will not support a deliberate indifference claim).

As to Richardson, Plaintiff alleges that she denied his requests for a hand cart and ibuprofen, but he also alleges that she instructed him as where he could get those things (the canteen or HSU). He does not allege that she failed to provide him medical treatment, or that she knew of his serious medical need, or that her denials caused a delay in treatment that exacerbated his injury. He has not stated a claim against her.

Finally, as to Dr. Waterman, Plaintiff alleges that he did not respond to Plaintiff's request to be seen about his nightmares and anxiety that were preventing him from submitting to an MRI. Plaintiff does not allege that Dr. Waterman knew about his injured arm or contributed to the harm about which he complains in this lawsuit—the delayed treatment for his injured arm. Because he was not personally involved in the alleged constitutional injury, the allegations against Dr. Waterman do not state a claim against him. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (Individual liability under Section 1983 requires personal involvement in the alleged constitutional deprivation.).

Thus, Plaintiff shall be permitted to proceed on a claim of deliberate indifference to his serious medical need, in violation of the Eighth Amendment, against Defendant Charles Larson. 28 U.S.C. § 1915A(b).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Jesse Bassuener, Julie Ludwig, Wendy Polenska, Linda Richardson, Robert Waterman, and Candace Whitman be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this Order are being electronically sent today to the Wisconsin Department of Justice for service on Defendant Charles Larson;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendant shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this Order;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 10th day of April, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge